# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LeDON HOWARD, | ) | CASE NO. 1:15cv00050 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG |
| | ) | WHITE |
| BRIGHAM SLOAN, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |

Petitioner, LeDon Howard ("Howard"), challenges the constitutionality of his conviction and sentence in the case of *State v. Howard*, Cuyahoga County Court of Common Pleas Case No. CR-566854-A. Howard, *pro se*, filed an Amended Petition for a Writ of Habeas Corpus (Doc. No. 14) pursuant to 28 U.S.C. § 2254 on October 15, 2015. On November 12, 2015, Warden Brigham Sloan ("Respondent") filed his Amended Return of Writ. (Doc. No. 15.) For reasons set forth in detail below, it is recommended that Howard's Amended Petition be DENIED.

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts

underlying Howard's conviction as follows:

{¶ 2} Howard was charged with felonious assault for striking Shawna Mackey and breaking her jaw during a drug transaction gone awry. At the jury trial, Mackey testified that Howard had been introduced to her by Floyd McGee, a neighbor, three weeks before the incident. She bought drugs from Howard, and their relationship turned sexual at one point. In the early hours of August 16, 2012, around 2:30 a.m., after she was drinking for some time, her friend "Melvin" came over and they decided she would call Howard to purchase crack cocaine. At this time, McGee also joined them. When Howard arrived, Mackey got inside his vehicle, a blue Sonata. Howard was unhappy that Mackey only brought $7 for the transaction. Because she still owed him $5 dollars from previous drug buys, Howard snatched the $7 from Mackey's hand without giving her the drug, and ordered her to get out his car. The two began to argue loudly. Their argument drew the attention of her neighbors, Christopher Poole and Pasueall Nance. After she exited the car, she walked past Poole and McGee toward her apartment building. When she turned around, Howard hit her in her jaw. She "went straight to the ground," breaking her jaw.

{¶ 3} After she fell, McGee pushed Howard back and stopped Howard from hitting her again. She got up and went to her house to call 911. When the police arrived, she provided the police with Howard's phone number and told the police she knew him as "D."

{¶ 4} Mackey testified that she identified Howard in a photo lineup. She indicated 80 percent certainty at the photo lineup because the picture was a little fuzzy. However, she knew with 100 percent certainty that the person who punched her was Howard. When asked if she was able to see it was Howard who hit her, she answered "definitely." Mackey also identified Howard in court.

{¶ 5} McGee testified that he knew Howard since Howard was 15. He had introduced Howard to Mackey and was with Mackey on the night of the incident. He was with her before she went to Howard's car for the drug transaction. After Mackey exited the car, Howard exited as well. Mackey and Howard exchanged some words, and, the next thing he knew, he hit her and she fell to the ground. Howard told McGee later that he hit Mackey because Mackey "threatened" him.

{¶ 6} Christopher Poole testified that at the time of the incident, he had just come home from a third shift at work and was walking to his building. He saw Nance, Mackey, McGee, and another individual whom he did not know. Mackey and that individual were talking, and all of sudden, "she turned facing us and he hit her." Poole was later asked to identify the individual from a photo lineup. Poole could not identify him on the first try, but was able to do so on a second try, with

"100%" certainty. It is unclear from his testimony whether the photo lineups were administered on a single or two separate occasions. Detective Joseph Greene, who administered the photo lineups to Poole and was the sole witness presented by the defense, testified that Poole was not able to make an identification. It was unclear, however, from the officer's testimony whether he administered the first or both photo lineups.

{¶ 7} Nance testified that on the night of the incident, he and his cousin "Pony" were walking down the street. He saw Mackey and a man arguing in a parked car. Mackey got out of the car and started walking, and the man followed her. They stood "in front of each other" talking, and all of a sudden, he hit her, causing her to hit the ground. He identified Howard in court as the man who hit Mackey.

{¶ 8} Dr. Rothenberg treated Mackey in the emergency room. She described Mackey as "slightly intoxicated." She explained the extent of her jaw injury and the procedure required to hold her jaw in place. In addition, she testified that Mackey suffered mood disorder and PTSD due to abuse in her childhood. Mackey's psychiatric assessment report noted she also suffered "psychotic manifestations," which meant sometimes having "thought processes that could be not in touch with reality."

{¶ 9} Officer Andrew Ziska investigated the assault incident. He testified that at the scene of the incident, Mackey only identified the individual who struck her as "D." The following day, Mackey telephoned Officer Ziska and put her friend McGee on the phone. McGee was at first hesitant but finally told the officer the perpetrator's name was "Ledon," who drove a Hyundai Sonata. McGee also provided the officer information regarding where "Ledon" lived. This testimony differed slightly from McGee's own account    McGee himself recalled that he did not talk to the police directly but only gave Mackey information about Ledon's car to give to the police.

{¶ 10} Detective Tom DeCaro also investigated the incident. He personally prepared three sets of photo lineups, one of them containing Howard's photo. He testified that Mackey identified Howard from one of the three sets of photo lineups. In addition, Mackey provided two phone numbers to the police and Detective DeCaro obtained from the phone company the phone record for one of the numbers. The phone record revealed multiple phone calls between Mackey and Howard on the night of August 15, 2012, and the phone calls stopped at around 2:00 a.m. the next day. Although the account information of the cell phone record, state's exhibit No. 12, includes both Howard's name and the name of another individual "Jim Bell," it was Howard's date of birth and email address that were listed in the account page.

{¶ 11} Officer Doug Evans was the blind administrator of the photo lineups shown to Mackey. He testified he showed her three sets of photo lineups and she identified Howard from the second set.

{¶ 12} Kaniece Kates, Howard's fiancée, testified she owned a Hyundai Sonata and she let Howard drive her vehicle. She also testified that sometime in August 2012, Howard lost his cell phone and obtained a new number, but she did not recall with certainty when, or what these phone numbers were.

{¶ 13} The jury found Howard guilty of felonious assault. The trial court sentenced him to a prison term of three years, to run consecutively to a sentence on an unrelated case.

*State v. Howard*, 2014 WL 2167980, at **1-3 (Ohio App. 8th Dist. May 22, 2014).

## II. Procedural History

### A.    Conviction

On October 2, 2012, a Cuyahoga County Grand Jury charged Howard with one count of felonious assault, in violation of Ohio Rev. Code § 2903.11(A)(1), and one count of intimidation of crime victim or witness, in violation of Ohio Rev. Code § 2921.04(B)(1).  (Doc. No. 6-1, Exh. 1.)

On March 18, 2013, Howard, through counsel, moved to obtain transcripts of recorded State witness interviews as well as his own statements, all at State expense due to his indigency. (*Id.*, Exh. 3.)  The State opposed Howard's motion.  (*Id.*, Exh. 4.)  The trial court denied Howard's motion on June 5, 2013.  (*Id.*, Exh. 5.)

On April 8, 2013, Howard, through counsel, moved to *voir dire* Shawna Mackey and to suppress her identification.  (*Id.*, Exh. 6.)  The State opposed the motion.  (*Id.*, Exh. 7.)  The trial court denied Howard's requests.  (*Id.*, Exh. 8.)

Howard's jury trial commenced on June 3, 2013.  (Doc. No. 6-2 at Tr. 66.)  On June 5, 2013, after the State rested its case, Howard moved for an acquittal on both counts.  The trial

-4-

court granted Howard's motion for acquittal on the intimidation charge, but denied it as to

felonious assault.  (Doc. No. 6-1, Exh. 9.)  On June 7, 2013, Howard was found guilty of

felonious assault.  (*Id*., Exh. 11.)  On June 11, 2103, the trial court sentenced him to three years

in prison, to be served consecutively with his sentence in another case.  (*Id*., Exh. 12.)

**B.      Direct Appeal**

On July 10, 2013, Howard, through new counsel, filed a timely Notice of Appeal with the

Court of Appeals for the Eighth Appellate District ("state appellate court").  (*Id*., Exh. 13.)  In his

appellate brief, Howard raised the following assignments of error:

> 1.    The trial court erred by failing to give a mandated jury instruction on the
>       State's noncompliance with the statutory requirements of R.C. § 2933.83,
>       in violation of Appellant's Sixth and Fourteenth Amendment rights.
>
> 2.    The trial court erred by denying Appellant's motions to *voir dire* witnesses
>       and suppress pre-trial identification, in violation of his Sixth and
>       Fourteenth Amendment rights.
>
> 3.    The trial court erred when it denied Appellant's motion for a transcript of
>       an audiotaped police statement, in violation of his Sixth and Fourteenth
>       Amendment rights.
>
> 4.    The trial court erred when it sentenced Appellant to a consecutive term of
>       imprisonment without making the findings required by R.C. §
>       2929.14(c)(4).

(Doc. No. 6-1, Exh. 14 at 45.)  The State filed its brief in opposition on January 13, 2014.  (*Id*.,

Exh. 15.)

On May 22, 2014, the state appellate court issued its decision affirming in part and

reversing in part the trial court's judgment.  It sustained Howard's fourth assignment of error,

and remanded to the trial court to consider whether consecutive sentences were appropriate.  The

court overruled Howard's remaining assignments of error.[1]  *Howard*, 2014 WL 2167980, at *8.

(Doc. No. 6-1, Exh. 16.)

On June 26, 2014, Howard, *pro se*, filed a Notice of Appeal with the Supreme Court of

Ohio.  (Doc. No. 6-1, Exh. 18.)  In his memorandum in support of jurisdiction, Howard raised the

following propositions of law:

1.  The trial court erred by failing to give a mandated jury instruction on the state's noncompliance with the statutory requirements of R.C. 2933.83, in violation of Appellant's Sixth and Fourteenth Amendments to the United States Constitution.

2.  The trial court erred by denying Appellant's motions to voir dire witnesses and suppress pretrial identification, in Appellant's Sixth and Fourteenth Amendments to the United States Constitution.

3.  The trial court erred when it denied Appellant's motion for a transcript of an audiotaped police statements [sic], in violation of Appellant's Sixth and Fourteenth Amendments to the United States Constitution.

4.  The trial court erred when it sentenced Appellant to a consecutive term of imprisonment without making the findings required by R.C. 2929.14(c)(4), in violation of Appellant's Sixth and Fourteenth Amendments to the United States Constitution.

(Doc. No. 6-1, Exh. 19 at 119.)  The State waived response.  (*Id*., Exh. 20.)  On October 8, 2014,

jurisdiction was declined pursuant to S. Ct. Prac. R. 7.08(B)(4).  (*Id*., Exh. 21.)

### C.    Application to Reopen

On August 20, 2014, Howard, *pro se*, filed an Application for Reopening pursuant to

Rule 26(B) of the Ohio Rules of Appellate Procedure.  (Doc. No. 6-1, Exh. 22.)  He claimed his

appellate counsel was ineffective for failing to raise the following assignments of error:

---

[1]  On July 1, 2014, the trial court, on remand, issued a new sentencing entry.  It ordered that Howard's two sentences run concurrently for a total sentence of four years in prison.  (*Id*., Exh. 17.)

1.      Appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution where his appellate counsel failed to argue obstructing justice and tampering with evidence against Cleveland Heights police department, prejudicing Appellant to receiving a full review by the court.

A.      The State adduced insufficient evidence to support [Mr. Howard's] conviction and that the conviction is contrary to the manifest weight of the evidence in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

B.      The Defendant-Appellant [Mr. Howard] was deprived of his right to a fair trial due to prosecutorial misconduct, by its failure to correct knowingly false and perjured testimony in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio constitution.

(Doc. No. 6-1, Exh. 22 at 159, 160, 162.)  The State opposed Howard's application.  (*Id*., Exh. 23.)  On December 22, 2014, Howard's application was denied on the ground that he had not established a colorable claim of ineffective assistance of appellate counsel.  (*Id*., Exhs. 24, 25.) A review of the Supreme Court of Ohio's online docket indicates Howard has not appealed the state appellate court's ruling.

**D.      Federal Habeas Petition**

On January 9, 2015, Howard, *pro se*, filed a Petition for Writ of Habeas Corpus.  (Doc. No. 1.)  He asserted six grounds for relief.

Respondent filed an Answer/Return of Writ on March 13, 2015.  (Doc. No. 6.)  Howard filed a "Reply" on May 13, 2015.  (Doc. No. 8.)

On June 15, 2015, Howard filed a "Combined Motion to Amend the Traverse" with an

-7-

attached "Traverse." (Doc. No. 9.) On June 23, 2015, he filed a "Supplemental State Court Record." (Doc. No. 10.) Respondent construed the pleading to be a motion to supplement the record, and opposed it in part. (Doc. No. 11.) On October 15, 2015, this Court issued an Order stating that it construed Howard's motion to amend the traverse as seeking leave to amend his petition to raise the three grounds for relief identified in the proposed traverse. The Court further stated that it would consider only those three grounds, and ordered the Clerk's Office to file Howard's proposed traverse as an amended petition instanter. (Doc. No. 13.)

Howard's Amended Petition asserts the following three grounds for relief:

**Ground One**:    The trial court's failure to provide jury instructions on the State's noncompliance with statutory requirements of R.C. 2933.83 violated Howard's Sixth and Fourteenth Amendment rights.

**Ground Two**:    The trial court erred by denying Petitioner's motion to voir dire witnesses and suppress pretrial identification.

**Ground Three**:    The trial court erred when it denied Petitioner Howard's motion for transcript of McGee's audiotaped police statement.

(Doc. No. 14 at 9, 15, 18.) On November 12, 2015, Respondent filed an Amended Return of Writ. (Doc. No. 15.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(b),( c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th

-8-

Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

**B.     Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

---

[2]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).  "In determining whether a state court actually enforced a procedural rule, we apply the 'plain statement' rule of *Michigan v. Long*, 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983)."  *Lovins v. Parker*, 712 F.3d 283, 296 (6th Cir. 2013) ("a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Lovins*, 712 F.3d at 295 ("a claim is procedurally defaulted where the petitioner failed to exhaust state court remedies, and the remedies are no longer available at the time the federal petition is filed because of a state procedural rule.")  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely

state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar.") (citations omitted).

-10-

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well

within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir.

2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at

138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434

F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error." *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th

Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*,

527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is

-11-

actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough    a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F. Supp. 2d 786, 807 (N.D. Ohio 2007).

**C.    Application to Howard: Grounds One and Two**

Howard's first two grounds for relief are premised on his contention that the photo lineup from which Mackey identified Howard as her assailant did not comply with § 2933.83 of the Ohio Revised Code, which sets forth requirements for the police administration of photo lineups. Ohio Rev. Code § 2933.83.  The statute also provides that evidence of noncompliance with these requirements is relevant to a defendant's motion to suppress the identification and is admissible at trial to support a claim of misidentification.  Further, if such evidence is admitted at trial, the court must instruct the jury to consider the noncompliance in determining the reliability of the eyewitness identification resulting from that lineup.  Ohio Rev. Code § 2933.83(C).

In Howard's first ground for relief, he claims the trial court committed constitutional error when it failed to instruct the jury regarding the noncompliant photo array.  (Doc. No. 14 at 9-14.)  In his second, Howard argues the trial court violated his due process rights by denying his pretrial motion to voir dire Mackey and suppress Mackey's identification, which resulted from the noncompliant photo lineup.  (*Id*. at 15-18.)

Respondent asserts that both of these claims are procedurally defaulted because the state appellate court found that he had waived them at trial.  (Doc. No. 15 at 13-15, 19-23.)  The court

-12-

of appeals, the last state court to consider the claims, explained:

{¶ 22} Having reviewed the statute and the case law regarding photographic identification procedures, we now turn to the instant case. Before trial, Howard filed a "motion to voir dire witness and suppression of eyewitness identification." He did not allege the police administration of the photo lineups was not in compliance with the statute. Rather, he argued Mackey's out-of-court identification was not reliable under the totality of the circumstances pursuant to the second prong of the Biggers  Monford test, because she was highly intoxicated at the time of the incident and she only identified her attacker as "D" and her description of that person's build as "thin" did not match his physique. He claimed Mackey identified him based purely on the information provided by McGee, with whom he had a history of animosity.

{¶ 23} At the hearing over the motion to suppress, Detective DeCaro, who prepared the photo lineups, testified that he compiled three sets of photos and gave them to Officer Evans, the blind administrator, to show to Mackey. Officer DeCaro testified Mackey identified folder No. 5 in the second set of lineups, which contained Howard's photo. In the state's exhibit containing the second set of photo lineups, the photos    folders were not marked with numbers. Detective DeCaro, however, testified that he knew folder No. 5 contained Howard's photo because he compiled the folders himself.1

{¶ 24} When the trial court inquired whether the defense was challenging the procedures of the photo array, the defense counsel raised one specific issue regarding the photo lineups. Each set of photo lineups contained a lineup "key," which is a sheet of paper (not available to the blind administrator) containing all six photos in the set with identifying information. Defense counsel pointed out that the photo lineup "key" in the second set of photo lineup (the set containing Howard's photo) should have been marked with number 2, yet it was left unnumbered.

{¶ 25} The defense counsel cross-examined Detective DeCaro at great length regarding the numbering of the lineup "key." Detective DeCaro testified that how the numbering of the lineup "keys" would not affect the identification procedure because the lineup "keys" were not available to the blind administrator during the administration of the photo lineup.

{¶ 26} The state submitted three exhibits, consisting of the three sets of photo lineups prepared by Detective DeCaro and administered by Officer Evans, each complete with the instructions for the administrations, a supplemental report for the folder system utilized, the photos shown, and the lineup "keys." Because the defense did not allege noncompliance with the statute but only focused on the

-13-

issue of the numbering of the photo lineup "keys," the defense did not question Detective DeCaro regarding the folder system utilized.

{¶ 27} The trial court found the issue raised by the defense regarding the numbering of the photo lineup "key" to be "minute." It determined the procedure utilized in this case to be in compliance with the statute, meeting the first prong of the test. Because Howard failed to demonstrate the first prong, the court did not address the second prong   whether the identification was reliable under the totality of the circumstances   before it denied the motion to suppress.

{¶ 28} On appeal, Howard raises a claim regarding the photo lineup not raised before the trial court. He now argues the photo lineup procedure was not in compliance with the statute and was "fatally flawed." He also claims that the trial court erred in not instructing the jury on the "noncompliance" of the procedure utilized, even though he never requested such a jury instruction.

{¶ 29} Howard waived these claims that he now raises for the first time on appeal. *Phillips v. Irwin*, 96 Ohio St.3d 350, 2002 Ohio  4758, 774 N.E.2d 1218, ¶ 6. Even if we were to consider it, we would find that his claims lack merit, for the following reasons.

Fn. 1.  We note that the statute provides for a folder system in which the administrator, not the investigating officer, numbers the folders containing the photos. R.C. 2933.83(B)(6)(c). Here, Detective DeCaro testified he numbered the folders, a practice that deviated from the folder system provided in the statute. Howard did not claim any error in this regard, either at trial or on appeal, and we do not find prejudice, as the photo lineups were shown by a blind administrator, who did not know which folder contained the suspect's photo.

*Howard*, 2014 WL 2167980, at **4-5.

Howard procedurally defaulted his first two grounds for relief.  He did not request a jury instruction regarding a noncompliant photo lineup or otherwise object to the absence of such an instruction.  Nor did he raise to the trial court, either in his pretrial motion to suppress or at the hearing on that motion, the arguments regarding the photo lineup's statutory noncompliance that he later asserted on appeal and now asserts here.  (*See* Doc. No. 6-1, Exh. 6; Doc. No. 6-2 at 30-63; Doc. No. 6-1, Exh. 14.)  Ohio's contemporaneous objection rule requires that a party

-14-

preserve an error for appeal by calling it to the attention of the trial court at a time when the error could have been avoided or corrected.  *State v. Glaros*, 170 Ohio St. 471 (Ohio 1960), paragraph one of the syllabus; *State v. Mason*, 82 Ohio St. 3d 144, 162 (Ohio 1998).  Failure to adhere to this "firmly-established" rule is "an independent and adequate state ground" upon which to find habeas claims procedurally defaulted.  *See, e.g., Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).

In addition, because the state court expressly relied on the state procedural bar, these claims remain procedurally defaulted even though the court conducted an alternative merits analysis.  *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (State courts "[n]eed not fear reaching the merits of a federal claim in an alternative holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law."); *accord Scott v. Mitchell*, 209 F.3d 854, 865-66 (6th Cir. 2000) ("*Harris* does not preclude a finding that the state procedural rule was actually enforced where the state court decision also relies on an alternative ground."); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998) ("Coe claims that the court of appeals's alternative holding  the he would lose on the merits anyway  means that he is not procedurally barred, because the state courts in fact reached the merits. This argument fails due to the Supreme Court's decision in *Harris* ....").

Therefore, Howard's first two grounds for relief are procedurally defaulted.  Furthermore, Howard does not argue that the procedural bar of either claim should be excused based on a showing of cause and prejudice or actual innocence.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable
>> application of, clearly established Federal law, as determined by the
>> Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination
>> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).   Clearly established federal law is to be determined by the holdings

of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL

2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S.   , 130 S.Ct. 1855, 1865-1866 (2010);

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.

2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal

principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly

established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th

Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute

"clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL

2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

-16-

the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions."  *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id*. at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking

-17-

in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786  87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

A.  **Ground Three:** *Trial-Court Error / Transcript of McGee Statement*

In his third ground for relief, Howard contends that the trial court violated his Sixth Amendment rights to confrontation and cross-examination when it denied his motion for a state-provided transcript of the audiotaped statement of Floyd McGee.  (Doc. No. 14 at 18-24.) McGee introduced Mackey to Howard, was present during the assault, and testified for the prosecution at trial.  In his motion, Howard conceded that McGee's recorded statement was produced to him during pretrial discovery.  (Doc. No. 6-1, Exh. 3 at 4; *see also* Doc. No. 6-1, Exh. 4 at 17; Doc. No. 6-2 at Tr. 23, 26.)  Nevertheless, a transcript of the audio recording was necessary, he argued, to help the trial court and counsel more efficiently cross-examine McGee. (Doc. No. 6-1, Exh. 3 at 9-10.)  Conversely, Respondent contends that ground three fails to state a federal constitutional violation and emphasizes that Howard was indeed provided a copy of the audio recording in question, but simply was not provided a transcript of said recording at state expense.  (Doc. No. 15 at 31.)

Howard raised this claim on direct appeal to the state appellate court, which adjudicated it on the merits.  *Howard*, 2014 WL 2167980, at *7.  He also raised it to the Ohio Supreme Court, which declined jurisdiction.  (Doc. No. 6-1, Exh. 21.)  This claim, therefore, is preserved for federal habeas review.

The state appellate court, in rejecting this claim, reasoned:

{¶ 37} Under the third assignment of error, Howard claims the trial court erred when it denied his motion for a transcript of an audiotaped statement made to the police by McGee, in violation of his Sixth and Fourteenth Amendment rights. Before trial, Howard requested that the state provide a transcript of a videotaped statement made by McGee to the police. Howard claimed that because Mackey was "drunken and high" on the night of the incident and provided insufficient identifying information to the police that night, McGee was *the* key witness in this case. He claimed a written transcript of McGee's statement was necessary in order to effectively cross-examine him and expose any prior inconsistent statements. The defense argued to the trial court that without a written transcript, it would be very cumbersome and time-consuming to cross-examine McGee and to demonstrate inconsistency between his in-court testimony and his statements recorded in the audiotape. The defense argued a transcript of McGee's statements on the audiotape was necessary for purposes of "judicial economy."

{¶ 38} We first note that, despite claiming McGee made prior inconsistent statements necessitating a careful cross-examination of him aided by a written transcript, the defense never did cross-examine McGee at trial regarding his prior recorded statements     presumably because no such inconsistent statements actually existed. Therefore, Howard cannot now claim a denial of a state-provided transcript of the audio-taped statement prejudiced his ability to present a defense.

{¶ 37} Furthermore, Howard claims he was entitled to a transcript of the audiotaped statement pursuant to the authority of *State v. Arrington*, 42 Ohio St.2d 114, 326 N.E.2d 667 (1975). His reliance is misplaced. In *Arrington*, the court held that in a criminal case, "the state must provide an indigent defendant with a transcript of prior *proceedings* when that transcript is needed for an effective defense or appeal." (Emphasis added.) *Id.* at paragraph one of the syllabus. *Arrington* is not applicable here, because that case concerned the necessity of a state-provided transcript of judicial "proceedings," and we are not aware of any case law interpreting "proceedings" to include a witness's audiotaped police statements. The third assignments of error is without merit.

*Howard*, 2014 WL 2167980, at *7.

Howard argues that the state appellate court's decision contravenes or misapplies *Griffin v. Illinois*, 351 U.S. 12 (1956), and *Britt v. North Carolina*, 404 U.S. 226 (1971), and was based on an unreasonable determination of the facts.[3]  (Doc. No. 14 at 23-24.)  The Court disagrees.

_____

[3] Howard also argues that the Court should review this claim *de novo*.  (Doc. No. 14 at 18.)  When presented with a claim that was "adjudicated on the merits in state court,"

-19-

In *Griffin*, the Supreme Court held that once a state offers criminal defendants the right to appeal their cases, the Fourteenth Amendment's equal protection and due process guarantees dictate that it must provide a trial transcript to an indigent defendant if the transcript is necessary to a decision on the merits of the appeal.  *Griffin*, 351 U.S. at 18-19.  The Court has since extended *Griffin*'s holding to ensure that states "provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners." *Britt,* 404 U.S. at 227.  *See, e.g., Burns v. Ohio*, 360 U.S. 252 (1959) (indigent defendants not required to pay fee before filing notice of appeal of conviction); *Gideon v. Wainwright*, 372 U.S. 335 (1963) (indigent defendants entitled to assistance of trial counsel); *Douglas v. California*, 372 U.S. 353 (1963) (indigent defendants entitled to counsel on first direct appeal as of right).

In *Britt,* the Court considered whether a state court had properly determined that a transcript of a prior mistrial requested by an indigent defendant was not needed for an effective defense.  *Britt*, 404 U.S. at 227.  The Court noted that two factors are relevant to determining the need for a free transcript: (1) the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and (2) the availability of alternative devices that would fulfill the same functions as a transcript.  It held:

> A defendant who claims the right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight.  In this case, however, petitioner has conceded that he had available an informal alternative which appears to be substantially equivalent to a transcript.  Accordingly, we cannot conclude that the court below was in error in rejecting his claim.

*Id*. at 230.

---

however, habeas courts are limited to reviewing the claim under AEDPA's "deferential lens."  *Hill v. Mitchell*, 400 F.3d 308, 311 (6th Cir. 2005).

In *State v. Arrington*, 42 Ohio St. 2d 114, 116 (1975), cited by the state appellate court, the Ohio Supreme Court adopted the holdings and principles established by the Supreme Court in *Griffin* and *Britt*.

As Respondent points out, however, the state appellate court was correct in finding that *Arrington*    and therefore *Griffin* and *Britt*, which it follows    do not apply to Howard's claim. Those cases require free transcription of prior judicial proceedings only.  Howard has not identified any Supreme Court precedent extending *Griffin* and its progeny to an indigent defendant's request for a free transcript of a witness' recorded statement to police.  (Doc. No. 15 at 33.)  The Supreme Court has made it clear that only its own holdings can form the basis for habeas relief under AEDPA.  *See, e.g., White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) ("clearly established Federal law" includes "only the holdings, as opposed to the dicta, of Supreme Court decisions" (internal quotation marks and citations omitted)); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" (citing § 2254(d)(1)).  Howard also has not identified any factual determinations the state appellate court made that allegedly were unreasonable under § 2254(d)(2).

Furthermore, even if *Griffin* and its progeny applied here, the state appellate court's decision was reasonable.  Howard possessed McGee's recorded statement, which certainly was "substantially equivalent to a transcript[]."  *Britt*, 404 U.S. at 230.  Defense counsel could have listened to the audiotape and noted the location on the tape of any significant statements.  A transcript would not have been necessary for effective cross-examination.  Moreover, as the state

court observed, defense counsel never cross-examined McGee at trial regarding his prior recorded statements.  The court of appeals reasonably assumed this was because no such inconsistent statements actually existed.  *Howard*, 2014 WL 2167980, at *7.  Howard, therefore, had no compelling need at trial for a state-provided transcript of McGee's audiotaped statement.

This claim is meritless.

## V.  Conclusion

For the foregoing reasons, it is recommended that Howard's Amended Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: February 8, 2016

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**

-22-